Filed 4/13/21  In re G.O. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re G.O., a Person Coming Under the Juvenile Court Law. | D078108 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. J519705) |
| Plaintiff and Respondent, | |
| v. | |
| V.V., | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Rohanee Zapanta, Judge.  Conditionally reversed and remanded with directions.

Clare M. Lemon, under appointment by the Court of Appeal, for Defendant and Appellant V.V. (Mother).

Office of County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

V.V. (Mother) appeals from an order of the juvenile court terminating her parental rights with respect to minor child, G.O. Mother asserts that the juvenile court and the San Diego County Health and Human Service Agency (the Agency) failed to comply with the requirements of the Indian Child Welfare Act (ICWA, 25 U.S.C. § 1901 et seq.) by failing to adequately inquire as to whether G.O.'s biological father has any Indian ancestry. We agree that the juvenile court and the Agency did not conduct adequate inquiry. We therefore conditionally reverse the order and remand the matter for the limited purpose of compliance with ICWA.

FACTUAL AND PROCEDURAL BACKGROUND

Given the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings and focus on the facts relevant to the ICWA findings at issue.

The Agency filed a juvenile dependency petition on behalf of G.O. in March 2018 and alleged that Mother was unable to care for G.O. due to mental illness. The Agency conducted an initial ICWA inquiry at the outset of the case. Mother denied having any Indian heritage and indicated that she did not have any information regarding the identity of G.O.'s biological father.

Ismael I. was identified as a potential father and the juvenile court ordered genetic testing to confirm paternity. Mother and Ismael filled out written ICWA-020 Parental Notification of Indian Status forms.[1] Consistent with her previous statements, Mother indicated that she did not have any

---

[1] We hereby grant the Agency's unopposed request that we take judicial notice of the ICWA-020 Judicial Council form. (See Evid. Code, §§ 452, 453, 459, subd. (d); Cal. Rules of Court, rule 8.252(a)(3); *Linda Vista Village San Diego Homeowners Assn., Inc. v. Tecolote Investors, LLC* (2015) 234 Cal.App.4th 166, 184-185.)

Indian ancestry. Ismael indicated that he may have Cherokee ancestry. Accordingly, in a jurisdiction and disposition report dated April 16, 2018, the Agency indicated that ICWA "does or may apply."

On April 16, 2018, the juvenile court noted that Ismael had no further contact with the Agency and made a finding that ICWA did not apply, without prejudice to alleged father Ismael should he come forward. That same month, the Agency received the results of the paternity testing, which indicated that Ismael was not the biological father of G.O. Based on those results, the juvenile court made a finding of non-paternity as to Ismael. Thereafter, the court found that reasonable inquiry had been made and that ICWA did not apply to G.O.

In August 2019, Mother identified another individual, I.V., as a potential biological father to G.O. Mother indicated that I.V. was incarcerated. The Agency attempted to contact I.V. in early November, but the prison indicated that the Agency would not be able to speak with him until a clearance was completed. Per the prison's recommendation, the Agency social worker sent a letter via certified mail to I.V. the next day. The letter informed I.V. that the Agency was inquiring about a child that might be his and asked him to contact the social worker via telephone as soon as possible.

I.V. contacted the Agency social worker the following month. He said that he would like a DNA test to determine if G.O. was his child and that he would like to have parental rights if the testing confirmed his paternity. A protective services social worker from the guardianship unit spoke with I.V. a few days later. I.V. reiterated that he wanted a paternity test, and further stated that Mother contacted his family members and indicated that G.O.

3

might be his child.  He also stated that he would like to be represented by counsel at the next hearing.

The juvenile court ordered paternity testing, and, in January 2020, the Agency social worker sent I.V. another letter.  In that letter, the Agency informed I.V. that they were working to arrange the paternity testing and that counsel had been appointed to represent I.V. in the juvenile dependency matter.  In addition, the letter indicated that the Agency would not be providing reunification services to I.V. given the length of his incarceration and asked if he agreed with the current placement for G.O.  Finally, the letter asked whether I.V. had any Native American ancestry and whether there were family members that may have relevant knowledge in the event that he did not know.  There is no indication in the record that I.V. ever responded to the letter.

The Agency received the results of the paternity test the next month.  The results indicated a high probability that I.V. was G.O.'s biological father.  The Agency maintained its position that reunification services were not appropriate given the anticipated length of I.V.'s incarceration.  The Agency informed I.V. via letter that there would be a special hearing on March 25, 2020 to address the results of the paternity test.  The hearing was subsequently postponed due to the Covid-19 pandemic, but the court entered a written order that same day, March 25, indicating that the parties had stipulated that I.V. was the biological father of G.O.

In a report submitted on May 20, 2020, the Agency indicated that the juvenile court had previously found that ICWA did not apply.  Regarding I.V., the Agency indicated that he had not had any contact with G.O. and that, therefore, there was no parent-child relationship between them.  The Agency

4

reported that G.O. was secure in her placement with a relative caregiver and recommended termination of both Mother's and I.V.'s parental rights.

At a hearing on August 12, 2020, the juvenile court noted that I.V. had attempted to appear telephonically from prison but that he was disconnected when the court tried to place him on hold prior to the matter being called. The court made several attempts to call the prison but was ultimately unable to reconnect with I.V. and proceeded without him. During the hearing, the juvenile court reconfirmed its finding that I.V. was the biological father of G.O. The record does not reflect when, if ever, the results of the paternity testing, or the court's associated paternity finding, were communicated to I.V.

The section 366.26 hearing was held on October 14, 2020. The Agency continued to recommend termination of Mother's and I.V.'s parental rights. The juvenile court issued an order for I.V. to appear at the hearing, but his counsel reported, and the court confirmed, that he declined to participate. After receiving evidence and hearing argument by the parties, the juvenile court terminated Mother's and I.V.'s parental rights. The court did not address ICWA at the hearing but stated, in the associated written order, that notice pursuant to ICWA was not required because the court knows the child is not an Indian child, and that reasonable inquiry had been made pursuant to ICWA.

Mother appeals.

## DISCUSSION

Mother's sole contention on appeal is that the juvenile court and the Agency did not fulfill their duties of inquiry under ICWA because they failed to adequately inquire whether I.V. has Indian heritage.

5

*I. Relevant Law and Standard of Review*

Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placements with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7, 10.) The federal statute establishes minimum standards for the removal and placement of children that are members of or eligible for membership in an Indian tribe to ensure the placements reflect the unique values of their Indian culture. (25 U.S.C. §§ 1901(3), 1902, 1903(4); *In re A.W.* (2019) 38 Cal.App.5th 655, 662 (*A.W.*).)

California adopted the main provisions of ICWA into California statutory law in 2006. (*In re Autumn K.* (2013) 221 Cal.App.4th 674, 703-704.) Following the enactment of new federal regulations concerning ICWA in 2016, California amended its own statutes, including portions of the Welfare and Institutions Code[2] related to the notice and inquiry provisions of ICWA. (25 C.F.R. § 23.107(c); 81 Fed. Reg. 38803 (June 14, 2016); *In re Breanna S.* (2017) 8 Cal.App.5th 636, 650, fn. 7; *A.W.*, *supra*, 38 Cal.App.5th at p. 662, fn. 3; Assem. Bill No. 3176 (2017-2018 Reg. Sess.).) Those changes became effective January 1, 2019. (*A.W.*, at p. 662, fn. 3.)

The Welfare and Institutions Code now creates three distinct duties regarding ICWA in dependency proceedings. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051-1052 (*D.S.*).) Of relevance here, beginning with the initial contact, the juvenile court and the Agency have an affirmative and continuing duty to inquire whether the child may be an Indian child. (§ 224.2, subd. (a); *D.S.*, at p. 1051; *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165; Cal. Rules of Court, rule

---

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

6

5.481(a).)  That inquiry includes, but is not limited to, asking the child's parents whether the child is, or may be, an Indian child.  (§ 224.2, subd. (b).)  In addition, the California Rules of Court require, at the first appearance of a parent in a juvenile dependency proceeding, that the juvenile court order the parent to fill out the ICWA-020 Parental Notification of Indian Status form.  (Cal. Rules of Court, rule 5.481(a)(2)(C).)  If the parent does not appear in court, the juvenile court must order the Agency to use reasonable diligence to find and inform the parent to fill out the ICWA-020 form.  (*Id.*, rule 5.481(a)(3).)

If the initial inquiry creates a "reason to believe" the child is an Indian child, then the court and the Agency have a duty to make further inquiry to determine whether there is "reason to know" the child is an Indian child.  (§ 224.2, subd. (e).)  If there is "reason to know" the child is an Indian child, the court and Agency then have a duty to provide formal notice to any affected tribes as set forth in section 224.3.  (§ 224.2, subds. (c), (d); § 224.3 [ICWA notice is required if there is a "reason to know" a child is an Indian child as defined under § 224.2, subd. (d)].)

On appeal, we review the juvenile court's ICWA findings for substantial evidence.  (*D.S.*, *supra*, 46 Cal.App.5th 1041, 1051; *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.)  Where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied.  (*D.S.*, at p. 1051.)

II.  *Discussion*

The juvenile court and the Agency failed to comply with the inquiry provisions of ICWA in this case.

The juvenile court made an initial finding, on April 16, 2018, that ICWA did not apply, without prejudice to then alleged father Ismael should

7

he come forward. Thereafter, paternity testing confirmed that Ismael was not G.O.'s biological father and the court made subsequent findings, in October 2018 and June 2019, that ICWA did not apply. At the time the court made those findings, Mother was the only identified parent of G.O. and she denied having any Indian heritage. Accordingly, the juvenile court's initial ICWA findings were appropriate.

However, the juvenile court and the Agency had an affirmative and *ongoing* duty of inquiry under ICWA. (§ 224.2, subd. (a); *D.S.*, *supra*, 46 Cal.App.5th at p. 1051.) Pursuant to that duty, and once I.V. was identified and confirmed as a biological parent of G.O., the juvenile court and the Agency had a duty to inquire whether I.V. had Indian heritage. (§ 224.2, subd. (a); *D.S.*, at p. 1051.) The court and the Agency failed to fulfill that duty.

An Agency social worker spoke with I.V. on the phone in December 2019 but did not ask whether he had Indian heritage. A protective services social worker spoke with I.V. a few days later and also did not inquire as to his Indian heritage.

The Agency did send I.V. a letter in January 2020 that included an inquiry as to I.V.'s Indian heritage, but that letter was not sufficient to fulfill the Agency's or the juvenile court's duty of inquiry under ICWA. As noted in the letter, the Agency was still trying to coordinate paternity testing at that time and thus, I.V. did not yet know whether G.O. was his child. There is no indication that I.V. responded to the questions in the letter regarding Indian heritage, and there is no indication that the Agency followed up in any way. In addition, the letter did not include an ICWA-020 form or a request that I.V. submit an ICWA-020 form. Despite the lack of response, neither the

court nor the Agency made any further attempts to inquire whether I.V. had Indian heritage.

After his paternity was confirmed, I.V. attempted to appear in court telephonically, but he was disconnected from the call. The juvenile court proceeded without him and reconfirmed his paternity on the record but did not address ICWA. Specifically, the court did not ask the Agency or I.V.'s counsel whether they had made any further inquiry or whether I.V. had disclosed any Indian heritage. In addition, the court did not order the Agency to make efforts to have I.V. fill out an ICWA-020 form. The Agency asserts that I.V. never appeared and thus was not available to fill out the ICWA-020 form, but in the absence of an appearance, the juvenile court was required to order that the Agency use reasonable diligence to locate I.V. and have him fill out the ICWA-020 form. (Cal. Rules of Court, rule 5.481(a)(3).) The court did not do so, and it appears that the Agency never made any attempt to have I.V. fill out the form.

Thereafter, there was no further discussion of ICWA and, specifically, no indication or inquiry as to whether I.V. had responded to the Agency's January 2020 letter or otherwise disclosed any Indian heritage. The Agency asserts that I.V. had become disinterested in the case and was not communicating with his counsel, based on counsel's statement at the hearing on October 7, 2020, "[s]o he can have another chance to reject me." However, as the court never inquired, there is no record as to whether I.V. was actually refusing to speak to counsel or the Agency and, similarly, no record as to any diligence the Agency may have undertaken to fulfill its duty of inquiry under ICWA beyond the single letter it sent in January 2020, before I.V.'s paternity was confirmed. (See *In re N.G.* (2018) 27 Cal.App.5th 474, 484 ["In the absence of an appellate record affirmatively showing the court's and the

agency's efforts to comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply."].)

Despite the lack of inquiry, on October 14, 2020, the juvenile court made additional findings that reasonable inquiry had been made pursuant to ICWA and that ICWA did not apply and terminated Mother's and I.V.'s parental rights. Because we have concluded that reasonable inquiry was not made with respect to I.V.'s Indian heritage, and there is no evidence in the record that would support the court's findings, we must reverse the juvenile court's order. (See *In re N.G.*, *supra*, 27 Cal.App.5th at p. 484 [failure to comply with ICWA inquiry and notice provision is, as a general rule, prejudicial error requiring reversal].)

We are cognizant of the need for permanency for G.O., and the fact that this decision may delay that permanency. However, the purpose of ICWA is to protect the rights of Indian children and the tribes to which they may belong, and it is therefore necessary that the juvenile court and the Agency fulfill their obligations to conduct adequate inquiry. (See *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1197.)

DISPOSITION

The order terminating Mother's and I.V.'s parental rights is conditionally reversed, and the matter is remanded to the juvenile court with directions for the juvenile court to vacate its ICWA findings and to direct the Agency to complete ICWA inquiry with respect to I.V. If, after the Agency does so, the court finds that G.O. is an Indian child, the court shall proceed in conformity with ICWA. If the court finds that G.O. is not an Indian child, the

10

court's order terminating Mother's and I.V.'s parental rights shall be reinstated.

AARON, J.

WE CONCUR:


HALLER, Acting P. J.


IRION, J.

11